**12 CV 8677**

UNITED STATES DISTRICT COURT
for the
Southern District of New York

| | | |
|---|---|---|
| PATRECIA CARPENTER-SARR | ) | #2 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO: |
| | ) | |
| GREENBERG TRAURIG, LLP | ) | JURY DEMAND |
| EDWARD HENRY | ) | |
| KAREN MORITA | ) | |
| DAWN MISKEE | ) | |
| | ) | |
| Defendants. | ) | |

RECEIVED NOV 27 2012 PRO SE OFFICE

COMPLAINT

## I. NATURE OF THE CLAIMS

1. Defendants discriminated against Plaintiff by subjecting her to unequal terms and conditions of employment based on Plaintiff's gender (female), race (black), age (57 at time of filing), and/or in retaliation for Plaintiff's complaints regarding discrimination. Among other forms of unlawful discriminatory personnel actions against Plaintiff, Defendants:

   (a) Subjected Plaintiff to unequal (lower) pay than similarly situated male employee, based solely on Plaintiff's race and gender;

   (b) Denied Plaintiff opportunities for advancement and job satisfaction by awarding positions to younger white male applicants;

   (c) Retaliated against Plaintiff, subsequent to the filing of Plaintiff's EEOC charges, by soliciting complaints from Plaintiff's immediate bosses and withholding of work to create an unsatisfactory work environment and pressuring Plaintiff to resign.

## II.   JURISDICTION

2.   The jurisdiction of this Court is invoked pursuant to the Act of Congress known as 28 U.S.C. §§ 1331, 1334(4), 2201, 2202, 42 U.S.C. § 2000e et seq., 29 U.S.C. §206(d) and 29 U.S.C. §621 et seq. This suit is authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq., The "Equal Pay Act" of the "Fair Labor Standards Act", 29 U.S.C. §206(d) and 29 U.S.C. §215(a)(3), the "Age Discrimination in Employment Act", 29 U.S.C. §621 ("ADEA"); all as amended by the "Lilly Ledbetter Fair Pay Act of 2009, " 42 U.S.C. 2000a, et seq. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by 42 U.S.C. § 2000 et seq., providing for injunctive and other relief against gender discrimination in compensation, by 29 U.S.C. §621 et seq. providing for injunctive and other relief against age discrimination and 42 U.S.C. § 2000e – 2(a)(1), and 42 U.S.C. § 1981 providing for injunctive and other relief against race discrimination.

3.   The plaintiff timely filed her charge of sex and race discrimination with the Equal Employment Opportunity Commission (E.E.O.C.) within 180 days after the last discriminatory treatment and has timely filed this complaint within 90 days of receiving her Right-To-Sue Letter from the E.E.O.C. (EXH. "A").

4.   Prior to and/or simultaneously with the commencement of this action, a copy of this Complaint was served and/or is being served on the New York City Commission on Human Rights and the Office of Corporation Counsel of the City of New York, thereby satisfying the notice requirements of § 8-502 of the New York City Administrative Code.

## III.   PARTIES

5. The plaintiff, Patrecia Carpenter-Sarr, (hereinafter "Plaintiff"), is a female born on October 27, 1955. She is a resident of the State of New Jersey and a citizen of the United States and was so during the relevant time period of this complaint. At all relevant times, Plaintiff was employed by Defendants in the City, County and State of New York.

6. At all relevant times, Plaintiff was (and continues to be) an "eligible employee" and/or an "employee" under all relevant statutes. Plaintiff is currently an employee of Greenberg Traurig, LLP.

7. The defendant, Greenberg Traurig, LLP (hereinafter "GT"), is an entity subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq. GT is an entity subject to suit under the "Equal Pay Act", 29 U.S.C. §206(d). GT is an entity subject to suit under the ADEA, 29 U.S.C. §621, et seq. GT employs at least twenty (20) persons.

8. Karen Morita, (hereinafter "Morita"), is an individual formerly employed as Director of Human Resources by GT during the relevant time period of this complaint. Morita is subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq. Morita is an individual subject to suit under the "Equal Pay Act", 29 U.S.C. §206(d), ADEA, 29 U.S.C. §621, et seq., NYC Human Rights Law and NYS Human Rights Law.

9. Dawn Miskee, (hereinafter "Miskee"), is an individual formerly employed by GT as Human Resources Manager during the relevant time period of this complaint. Miskee is subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq. Miskee is an individual subject to suit under the "Equal Pay Act", 29 U.S.C. §206(d), ADEA, 29 U.S.C. §621, et seq., NYC Human Rights Law and NYS Human Rights Law.

10. Edward Henry, (hereinafter "Henry"), is an individual employed by GT as Business Director during the last 2.5 years of the relevant time period of this complaint. Henry is subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq. Henry is an individual subject to suit under the "Equal Pay Act", 29 U.S.C. §206(d), ADEA, 29 U.S.C. §621, et seq., NYC Human Rights Law and NYS Human Rights Law.

11. Greenberg Traurig, LLP, Karen Morita, Edward Henry and Dawn Miskee hereinafter are collectively referred to as "Defendants".

## IV. FACTS

12. Plaintiff was employed by GT from June 28, 2004 through the present. Plaintiff is an African-American woman age 49 at the time of her commencement of work at GT, and 57 years at the filing of this Complaint.

13. GT is an international business law firm with 35 offices throughout the United States, Asia, Europe, the Middle East and Latin America.

14. Upon information and belief, at any given time GT employs more than 1,800 attorneys and more than 3,500 total employees.

15. At all times relevant to this complaint, Henry, Morita and Miskee were based in the New York office and were responsible for discriminatory and/or retaliatory personnel actions and/or decisions pertaining to Plaintiff.

16. Plaintiff worked as a Document Specialist and Second Shift Coordinator at the Document Center; Administrative Assistant to a Shareholder in the Media & Entertainment Department; Administrative Assistant to a Shareholder who was head of the NY Telecommunications Department and Administrative Assistant to 2 shareholders and 1 associate in the Intellectual Property Department. The latter positions were held simultaneously.

17. Morita, Miskee and Henry at all times relevant to this complaint represented themselves, and caused Plaintiff to understand them, to be acting on behalf of GT, with the full authority of GT and as managers of GT and consistently with all policies of GT.

18. Over the course of Plaintiff's career with Defendant, Plaintiff experienced and was subject to discriminatory denial of promotional opportunities, discriminatory denial of work opportunities and compensation discrimination.

19. On information and belief, Morita exercised her GT authority to repeatedly deny opportunities to Plaintiff, discourage Plaintiff from pursuing opportunities or simply eliminating or changing the nature of opportunities for advancement at GT when pursued by Plaintiff.

20. On information and belief additionally, with the authority of GT, Morita approached Plaintiff's supervisor in the Document Center and asked her to change her positive evaluation of Plaintiff to be more negative.

21. It is Plaintiff's belief based on repeated, consistent behavior of Morita and of the Defendants collectively that at each opportunity when a Shareholder familiar with Plaintiff and her talents requested her services, or when Plaintiff expressed her interest in a new announced opportunity, Defendants discouraged Plaintiff, willfully distorted her qualifications, discouraged GT personnel from pursuing their interest in Plaintiff and in at least two key cases noted above, hired instead employees unknown to GT and the shareholders but who were younger, white and male.

22. More specifically, in or about September 2005, a GT Shareholder who was head of the ERISA Department strongly encouraged and lobbied Plaintiff to work for him in connection with a special project for a special client in multiple capacities; as an Administrative Assistant and a Paralegal and project manager which would have been a promotion for Plaintiff. Morita tried to discourage Plaintiff from accepting the position. When Plaintiff refused to withdraw her acceptance, the position was restyled and Morita gave the position to a younger, white male rather than Plaintiff.

23. In or about October 2010, a job opening within the administrative staff was announced within GT. Plaintiff expressed her interest in the position to the Business Director, New York Office. He instructed Plaintiff to send an application to the Firm-wide Chief Administrative Officer ("Marty Miranda" or "Miranda"), who at the time was senior to Defendant Morita in the Human Resources Department ("HR"). At that time, Plaintiff was in the position of Administrative Assistant to the Head of the NY Telecoms Department and 2 other Shareholders and 1 Associate of the Intellectual Property Department. The position that opened was of Shared Services Document Center Manager. This would have been a promotion for Plaintiff with responsibility for firm-

wide, multiple office services. Plaintiff met or exceeded all qualifications for this position and applied for the position.

24. On or about November 2, 2010, Plaintiff submitted the application including a comprehensive and fully updated resume that reflected her years of diverse experience before and since joining GT and reference documents in the form of correspondence between President of GT demonstrating Plaintiff's knowledge of the GT "culture" which was a requirement of the position. This was sent to Miranda in the Miami office of Defendant. After hearing nothing for a period of time, Plaintiff requested an update on the position and was advised by Miranda that a decision was delayed until after the first of the coming year. Miranda copied Morita on this communication who had not previously been involved in this process to Plaintiff's knowledge.

25. On or about January 21, 2011, Plaintiff was advised by Miskee that Miskee had sent a copy of Plaintiff's resume, at the request of Morita to Kellie Figur for the position. Notwithstanding that Defendants had previously required Plaintiff to submit 3 additional, updated, expanded-experience resumes when Plaintiff applied for the position in the ERISA Department, the position in the Entertainment Department and the position in the Telecommunications and Intellectual Property Departments, the resume in Plaintiff's file which Defendants selected, without Plaintiff's knowledge to send to Ms. Figur for the Shared Services position, was the oldest and narrowest resume Plaintiff had submitted to the firm upon entry. Defendants did not consult Plaintiff before submitting this resume.

26. The position ultimately was awarded to a younger, white male with less relevant experience than Plaintiff and no prior knowledge of or experience in GT, and certainly no demonstration of knowledge of the GT "culture".

27. During Plaintiff's 8.5 years of working in GT's New York City office, Plaintiff received lower pay than employees with comparable experience and positions because of race, gender and/or age. One such example was in the Document Center where an employee doing the same or similar work in the same environment who had less responsibility than did Plaintiff as Shift Coordinator was more highly compensated than Plaintiff. Plaintiff did not complain to GT about this as she was unaware of it until recently.

28. When Plaintiff left the Document Center and worked as an Administrative Assistant Plaintiff was compensated less than a younger, white male employee doing the same or similar job, with the same or similar content and the same or similar responsibilities in the same work environment. During periods of this event, the younger, white male worker had less responsibility than did Plaintiff and continued to earn higher compensation.

29. As to the latter denial of equal compensation, Plaintiff complained to Miskee about the compensation discrimination and was told that she was compensated substantially equally to the younger, white male employee. Plaintiff was informed by Miskee that if she was unhappy with her compensation she should think about pursuing her future employment elsewhere.

30. Upon information and belief, in or about June, 2011, a GT Shareholder for whom Plaintiff worked at that time complained on Plaintiff's behalf to Miskee about the

disparity in compensation between Plaintiff and a younger, white male employee. The GT Shareholder also requested that the disparity be addressed and that Plaintiff's compensation would be made equal that of the younger, white male including the upcoming, promised pay increases.

31.     Upon information and belief, in or about August 2011, when the GT Shareholder met with Miskee after he was informed by Plaintiff that the disparity had not been rectified, Miskee showed the Shareholder a spreadsheet on her computer screen that indicated that the compensation was substantially equal.

32.     Upon information and belief, the Shareholder presented to Miskee a GT pay stub for the younger, white male employee that showed a substantial disparity in compensation in his favor over Plaintiff.

33.     Miskee replied that neither the Shareholder nor Plaintiff should have had access to the younger, white male employee's pay stub rather than explaining and/or addressing the inequality.

34.     In or about June 2012 when lawyers for whom Plaintiff was working left GT to join another firm, Plaintiff was left with less work than she prefers and is capable of doing. She requested work and additional lawyers but with little reply except for occasional projects directly from the Secretarial Supervisor. During that period when other lawyers left GT and their Administrative Assistants were left without work, HR assigned new or additional lawyers to them while not assigning them to Plaintiff. The foregoing denial of work adversely affected Plaintiff by, among other things, reducing her opportunities for overtime and causing undue uncertainty and stress.

35. In or about September 2012, after this situation persisted for a few months, Henry called Plaintiff into his office and suggested to her that she must be very unhappy and stressed coming to work each day not knowing if she was going to be fired or wondering if she was disliked, suggesting that she may want to leave the firm. During that same conversation, he mentioned that Plaintiff had requested from the EEOC a Right to Sue Letter and he asked what Defendants could do to make this go away.

36. In or about September 2012, Plaintiff was advised by one of the Associates for whom she worked that Defendant Miskee approached him and asked him for complaints against Plaintiff. He reported that he could not think of anything except that perhaps the turn around time was not as fast as it had been previously.

## V.     COUNT I – Equal Pay Act

37. The Plaintiff re-alleges and incorporates by reference paragraphs 1-36 above with the same force and effect as if fully set forth in specific detail herein below.

38. In each of her career capacities with GT, Plaintiff was similarly situated with younger, white male co-workers with similar skills, similar or less responsibility and similar content, doing equal work in the same establishment.

39. However, Plaintiff was compensated less in one case than a white female co-worker and in other cases less than younger, white male co-workers doing identical or less work but who were paid at a higher rate than Plaintiff. Following filing charges with the EEOC, Plaintiff discovered that the younger, white male's pay had increased along with the margin of disparity.

40. The Plaintiff was denied promotion opportunities, the pursuit of promotions offered to her by an individual Shareholder and the ability to advance in her

position where such promotional opportunities, internal job openings and advancement positions were given to younger, white male employees with no prior experience with the Defendants, no specific request from any GT Shareholder for his services and equivalent or less relevant experience and expertise than Plaintiff for the position.

41. Plaintiff consistently was denied equal compensation, equal opportunity for advancement and equal job satisfaction to other younger, white male employees with lower qualifications for the various positions than Plaintiff.

42. The Defendant willfully and maliciously discriminated against Plaintiff in pay, job satisfaction, job advancement and job opportunities because of her age, gender and race.

## VI. COUNT II – Title VII Disparate Treatment

### A. Discrimination in the Form of Lower Wages

43. Plaintiff repeats and reiterates and incorporates herein by reference the allegations contained in Paragraphs 1-42 above.

44. Plaintiff performed work equal or substantially equal to or greater than that of younger, white male employees, but received less pay for a substantially similar job.

45. The Defendant had a practice of keeping all compensation secret and then denying equal pay to Plaintiff through false representations of the compensation of other employees who were performing the same or similar or less demanding jobs, or who were equal to or less than Plaintiff in terms of responsibility and content of their positions.

### B.   Discrimination in Evaluation

46.   Defendants deliberately and maliciously discriminated against Plaintiff in evaluation of her qualifications for the position of Shared Services Document Center Manager by evaluating a limited resume they had on file and disregarding Plaintiff's complete, full experience resume for positions she performed within GT during her years there, as well as compatible experience and expertise from positions before her joining GT; and by hiring a younger, white male with less relevant experience.

47.   Plaintiff's full experience resume showed, among other relevant expertise and experience, proficiency in, and the go-to person for, technical support. Due to this experience and shareholder, training manager and Technical Support Director comfort with Plaintiff's technical support capability, Plaintiff was requested by GT to join the team of technical support providers of floor support during the upgrade of the GT firm-wide computer system. Due to her recognized technical support expertise, Plaintiff was the only floor support provider who was not a full time GT Technical Support or Training employee.

48.   Nevertheless, when asked for an explanation of her denial of the Shared Services Document Center Manager position, Plaintiff was told that she did not have any technical support experience.

### C.   Discrimination in Terms and Conditions of Employment

49.   Plaintiff believes and thus avers that she was isolated upon the departure of Shareholders whom she supported, by HR's not giving her new or incoming attorneys to support when another Administrative Assistant was resupplied with attorneys. This

was followed by Plaintiff's being summoned to the office of the Business Director who asked her how she feels wondering if she is disliked or if she is going to be fired.

### D. Discrimination in Job Satisfaction and Advancement Opportunity

50. Plaintiff was denied job satisfaction and advancement opportunities, when she applied for such opportunities announced by GT and when she was specifically requested to fill such a position by a Shareholder who knew and experienced her talents and capabilities. In both cases, the advancement and opportunity was given to a younger, white male not known to the firm or its shareholders.

51. Defendants willfully and maliciously discriminated against Plaintiff in pay, job satisfaction, job advancement and job opportunities because of her age, race and gender.

## VII. COUNT III   Violation of Lilly Ledbetter Fair Pay Act of 2009, 42 USC, 2000a

52. Plaintiff reasserts and incorporates by reference paragraphs 1-51 as if fully set forth below.

53. Defendants violated the provisions of the Lilly Ledbetter Fair Pay Act of 2009 by discriminating against Plaintiff on the basis of fair pay and compensation for equal work similar or less responsibility and similar or less content because of her race, gender and age.

## VIII. COUNT IV – Age Discrimination in Employment Act Disparate Treatment

54. Plaintiff re-alleges and incorporates by reference paragraphs 1-53 above with the same force and effect as if fully set forth in specific detail herein below.

55. Younger, white male employees received substantially higher salaries than the plaintiff for substantially equal work.

56. Knowing that at age 57, it would be difficult for Plaintiff to find a replacement position, Henry called Plaintiff into his office upon becoming aware of her request for the Right-to-Sue letter from the EEOC and asked her if she was concerned about coming into the office each day worrying about whether she would be fired or whether she was disliked.

57. Defendants discriminated against Plaintiff in denial of equal compensation, advancement opportunities, and job satisfaction opportunities on the basis of her age.

IX. **COUNT V – Retaliation in Violation of the Equal Pay Act and Title VII**

58. Plaintiff repeats and reiterates Paragraphs 1-57 above as if set forth fully herein below.

59. On 2 occasions, in response to a "suggestion-box-type" solicitation by the then Managing Shareholder and present CEO of GT and in pursuit of a change in policy on bereavement leave in the employee manual following a denial of leave by Defendant Morita, appreciation of Plaintiff's suggestions was demonstrated in one case by the Managing Shareholder and in the other by Defendant Morita's superior, Miranda. In the latter case, Miranda changed the firm policy consistent with Plaintiff's suggestion. Upon information and belief, in both cases, Morita's acts or behavior were reviewed by her superiors and change in policy made or considered. Morita's consistently negative and disruptive interference in Plaintiff's opportunities at GT became pronounced and repeated following these events. Morita and Miskee left GT within 2 weeks of each other and in

less than one month following the first mediation session at the EEOC in which Plaintiff's claims were addressed, and at which Defendant's Assistant General Counsel, Defendant's HR Compliance Director, Henry and Morita were present and participating.

X. **COUNT VI – Violation of New York City Human Rights Law – Discrimination on the Basis of Race, Gender Age and Unlawful Retaliation**

60. Plaintiff re-alleges each and every allegation contained in paragraphs 1-59 with the same force and effect as if set forth in specific detail herein below.

61. Plaintiff was paid less, and was also denied opportunities for advancement because of her gender, age, race and complaints regarding discrimination.

62. Defendants willfully and intentionally discriminated against Plaintiff in violation of the New York City Human Rights Law by denying her equal terms and conditions of employment.

63. As a result of the foregoing acts of the Defendants, Plaintiff was discriminated against in violation of New York City Human Rights Law (NYC Administrative Code §§ 8-502 and 8-107 et seq.), and has thereby cause Plaintiff to suffer damages, including but not limited to economic injuries, lost employment opportunities, and emotional distress.

64. As a proximate result of the Defendants' unlawful and discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress, anxiety, insomnia and fatigue, loss of self-esteem and self confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

**XI.     COUNT VII – Violation of New York City Human Rights Law**

65.     Plaintiff re-alleges and incorporates by reference paragraphs 1-64 above with the same force and effect as if fully set forth in specific detail herein below.

66.     At all relevant times, Defendant employed more than four employees and constituted an "Employer" within the meaning of New York Executive Law §§ 292(1) and (5).

67.     As a result of the Defendants' discriminatory acts and unlawful employment practices, the Plaintiff was discriminated against in violation of the New York State Human Rights Law, New York Executive Law §§ 290 et seq., and the New York City Human Rights Law, New York Administrative Code §§ 8-101 et seq.

**XII.    COUNT VIII – Violation of New York State Executive Law**

68.     Plaintiff re-alleges and incorporates by reference paragraphs 1-67 above with the same force and effect as if fully set forth in specific detail herein below.

69.     As a result of the Defendants' discriminatory acts and unlawful employment practices, the Plaintiff was discriminated against in violation of the New York State Human Rights Law, New York Executive Law §§ 290 et seq., and the New York City Human Rights Law, New York Administrative Code §§ 8-101 et seq.

70.     This action further seeks monetary damages, to redress Defendants' unequal pay, discriminatory treatment and unlawful retaliation of Plaintiff due to Plaintiff's gender and race and Plaintiff's complaints of discrimination and in violation of the New York State Human Rights Law, New York Executive Law §§ 290 et seq., and the New York City Human Rights Law, New York Administrative Code §§ 8-101 et seq.

71. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

## XIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court assume jurisdiction of this action and enter a Judgment in her favor and against Defendants, GT, Morita, Henry, Miskee:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the defendant, GT, are violative of the rights of the plaintiff as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. § 2000e et seq., the "Equal Pay Act", 29 U.S.C. §206(d) and 29 U.S.C. 215(a)(3) and the "Age Discrimination in Employment Act", 29 U.S.C. §621 et seq.

2. Grant the plaintiff a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting in concert with the defendants, from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. § 2000e et seq., the "Equal Pay Act", 29 U.S.C. §206(d) and 29 U.S.C. 215(a)(3) and the "Age Discrimination in Employment Act", 29 U.S.C. §621 et seq.

3. Enter an Order requiring the defendant to make the plaintiff whole by awarding her a position comparable to the position she was denied at equal compensation and benefits, lost wages due to pay disparity (plus interest), liquidated damages,

compensatory and punitive damages, front pay as relevant and loss of benefits including bonuses, seniority and other benefits of employment.

4.   The plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

THE PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully submitted,

*Patrecia Sarr*

Patrecia Carpenter-Sarr (Pro Se)
589 Boulevard
Hasbrouck Heights, NJ 07604
Tel: (201) 960-7976

# EXHIBIT A

EEOC Form 161-B (11/09)  **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To: Patrecia Sarr<br>589 Boulevard<br>Hasbrouck Heights, NJ 07604 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2011-03167 | Thomas Perez, Investigator | (212) 336-3778 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____  8-30-12
Kevin J. Berry,                        (Date Mailed)
District Director

Enclosures(s)

cc:  Attn
     Director of Human Resources
     GREENBERG TRAURIG LLP
     200 Park Avenue
     New York, NY 10166